SAVOY, Judge
(dissenting).
I .respectfully disagree with the majority opinion in the instant case, being of the opinion that the results reached in the majority opinion are not consistent with the medical testimony adduced at the trial of the case in the district court.
The record reveals that prior to the accident in the instant case plaintiff had suffered and collected for three (3) injuries; two (2) accidents causing knee injuries; and the third causing a back injury. Plaintiff received a substantial settlement for the back injury case which occurred prior to the alleged back injury in the instant case, namely, the sum of $4,000.-00.
In his suit in the instant case, plaintiff alleged that on or about September 13, 1960, while in the course and scope of his employment, he was engaged in cutting, trimming and sawing trees; and while so engaged in said labors, he slipped and fell, injuring his back while carrying a tank of liquid spray strapped to his back.
*418 The evidence reveals that no one was present when the alleged accident occurred. Plaintiff contended that because of the injury, he suffered an aggravation of a preexisting condition. He prayed for compensation for the maximum period and at the maximum rate allowed under the Workmen’s Compensation Act of this State.
Defendant denied plaintiff had suffered an injury during the course of employment with it, and alternatively alleged that if plaintiff injured his back in the manner described in his petition, plaintiff was treated by competent medical experts until such time as he was fully cured and relieved of disability and discharged by the attending surgeon as able to resume his normal employment. Still in the alternative, defendant alleged that plaintiff received compensation during his full period of disability and all medical expenses were paid up to and including the date of plaintiff’s' discharge by the attending physician.
The evidence reveals that approximately six (6) days after the alleged accident in the instant case, plaintiff secured the services of Dr. Schexnaidre, a general practitioner at Franklin, Louisiana. After several treatments by said doctor plaintiff went to Alexandria, Louisiana, and was examined by Dr. T. E. Banks, engaged in the specialty of orthopedic surgery. Dr. Banks first examined plaintiff for the injury in the instant case on September 19, 1960. After examining plaintiff, the doctor found plaintiff to be suffering from a mild sprain of the low back. He re-examined plaintiff on September 26, 1960, and again on October 12, 1960. On this last examination, Dr. Banks made the following statement:
“I felt that the patient showed continued improvement and felt that he did not have any signs of sciatic irritation or neurological damage. I felt that there was some possible over acting at the time of the last examination and felt, that because of his past difficulty with which I was familiar with his back that a neuro-surgical consultation was in order and so arranged it.”
Dr. Banks sent plaintiff to Dr. Joseph M. Edelman. Dr. Edelman is a neurological surgeon residing in the City of Baton Rouge, Louisiana. Dr. Edelman examined plaintiff on October 31, 1960. He made a physical examination and. also had x-rays taken of plaintiff’s back. The x-ray films showed a smooth irregular defect in the superior anterior margin of L4, which had the appearance of an old fracture. The doctor was of the opinion that this condition was not related to the patient’s present injury, but that it could possibly have been related to the injury to the back two (2) years before. Dr. Edelman made the following conclusions:
“It was my opinion that the patient showed no evidence of a herniated or ruptured intervertebral disk, that there was nothing to suggest the presence of nerve .root compression. These conclusions were based on the fact that the patient had no mechanical abnormality of his back and no neurological abnormality. I could assign the patient no disability at the time I saw him referable to the injury of September 13, 1960, and I felt that he was able to carry out his usual work at the time that I saw him.”
Dr. Banks saw plaintiff on November IS and December 5, 1960, at which time he discharged him as having fully recovered and as being able to return to his normal work.
Plaintiff was then sent by his attorney to see Dr. H. K. Faludi of Shreveport, Louisiana, an orthopedic surgeon, who examined him several days after his discharge by Dr. Banks, namely on December 7, 1960. The doctor found mild symptoms only, but felt plaintiff had a small herniated disc. On March 20th a myelogram was performed and said test was negative. The doctor was then of the opinion that plaintiff had residuals of a lumbosacral sprain. He last *419 saw plaintiff on May 5, 1961, at which time he found improvement in his condition.
The instant case was heard by the trial judge on June 1, 1961, and completed on that date. The court ordered the matter to be submitted on briefs. Plaintiff was given ten (10) days after receipt of the deposition of Dr. Banks to file his brief, and defendant was granted ten (10) days after receipt of plaintiff’s brief to file his brief. On January 10, 1962, plaintiff filed a motion to re-open the case on the basis of a letter written by Dr. Banks addressed to plaintiff’s attorney dated December 8, 1961, wherein Dr. Banks stated that he had examined plaintiff on November 29, 1961, not having seen him since May, the year is not listed in the letter but I presume it must refer to the year 1961.
Dr. Banks examined plaintiff on May 25, 1961, and his conclusions were the same as those of December 5, 1960. He attributed some weakness in the trunk muscles to inactivity and use of a corset prescribed by Dr. Faludi. Dr. Banks recommended that the corset be discarded, and that plaintiff go back to work.
The trial judge, apparently not satisfied with the medical testimony in the case, on his own motion had plaintiff examined by Dr. Charles V. Hatchette, an orthopedic surgeon practicing at Lake Charles, Louisiana. Dr. Hatchette examined plaintiff on January 5, 1962, and March 2, 1962. On January 5, 1962, he made a physical examination of plaintiff and also had x-rays taken of his back. After the examination, Dr. Hatchette could find no evidence of disability. He re-examined plaintiff on March 2, 1962, and found an acute inflammatory condition of the glandular element of the left groin which resulted from a skinned leg resulting from plaintiff falling two (2) weeks prior to the last examination. Dr. Hatchette did not find plaintiff’s condition to have changed since his first examination.
Dr. Banks examined plaintiff on February 26, 1962, and found him to have muscle spasm in his back. This was a continuation of the pain in the examination of November 29, 1961. Dr. Banks admitted that prior to the examination of November 29, 1961, he had not seen plaintiff professionally for a period of six (6) months.
I am of the opinion that the plaintiff has not proven his case with that certainty required by law. I am convinced that the preponderance of the medical testimony is to the effect that plaintiff had recovered from any injury which he received on September 13, 1960, on December 5, 1960, when plaintiff was discharged by Dr. Banks. If plaintiff has any disability at this time, I am convinced it has no relation to the injury of September 13, 1960.
For the reasons assigned, I respectfully dissent.